UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARGARET GOODNOUGH,

                            Plaintiff,                    3:15-CV-0648
                                                          (GTS/DEP)
v.

JUDITH CLARK; and THOMAS CLARK,

                            Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

VILLARI, BRANDES & GIANNONE, P.C.               JOSEPH P. BRADICA, ESQ.
   Counsel for Plaintiff                        PETER M. VILLARI, ESQ.
8 Tower Bridge, Suite 400
161 Washington Street
Conshohocken, PA 19428

O'CONNELL & ARONOWITZ, P.C.                     PAMELA A. NICHOLS, ESQ.
   Co-Counsel for Plaintiff                     AMBER L. WRIGHT, ESQ.
54 State Street, 9th Floor
Albany, NY 12207

BARCLAY DAMON, LLP                              MATTHEW J. ROSNO, ESQ.
   Counsel for Defendants                       BRYAN J. MAGGS, ESQ.
243 Lake Street
Elmira, NY 14901

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this personal injury action filed by Margaret Goodnough

("Plaintiff") against Judith Clark and Thomas Clark ("Defendants"), is Defendants' motion for

summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 31.) For the reasons set forth

below, Defendants' motion is granted.

# I. RELEVANT BACKGROUND

## A. Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges as follows. Defendants were the owners of real property located at 124 Hillside Terrace, in the Town of Endwell, County of Broome and State of New York ("subject premises"). (Dkt. No. 1, ¶¶ 9-11 [Pl.'s Compl.].) At all times relevant to this lawsuit, Defendants were responsible for the safety and maintenance of the property. (*Id.*, ¶¶ 12-13.) On August 17, 2012, at approximately 11:00 a.m., Plaintiff was an invitee of Defendants at the subject premises. (*Id.*, ¶ 16.) On this date and time, Plaintiff was walking down a poorly lit interior staircase that led to the basement of the subject premises when she tripped and fell as a result of coming into contact with a dangerous and/or defective condition, i.e., an uneven step, located near the bottom of the interior staircase. (*Id.*, ¶ 17.) Defendants were, or reasonably should have been, aware of the dangerous and/or defective condition of the interior staircase and they breached their duty to maintain the subject premises in a reasonably safe condition. (*Id.*, ¶¶ 18-19.) As a direct and proximate result of Defendants' negligence, Plaintiff sustained serious and/or permanent bodily injuries as well as mental and emotional distress. (*Id.*, ¶ 21.) Based on these allegations, Plaintiff asserts a claim of negligence against Defendants. (*Id.*, ¶¶ 8-27.)

## B. Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts ("Rule 7.1 Statement") and expressly admitted by Plaintiff in her response thereto ("Rule 7.1 Response"). (*Compare* Dkt. No. 31, Attach. 5 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 39, Attach. 3 [Pl.'s Rule 7.1 Response].)

1.     The action arises out of an alleged incident on August 17, 2012, at 124 Hillside Terrace, Endwell, New York, which is owned by Defendants.  Defendant Judith Clark passed away after the filing of the Complaint.

2.     Plaintiff claims that Defendants are negligent for failing to maintain the subject premises, specifically for failing to maintain a staircase between the first floor and basement.

3.     Plaintiff testified at an examination before trial in this matter.  At her deposition Plaintiff testified as follows:

    a.     Plaintiff had been friends with Defendants for a very long time and was helping Mrs. Clark, who was suffering from Parkinson's disease, with laundry at the time of the accident.

    b.     Plaintiff had never seen anyone else fall down the basement stairs and never complained to Defendants about the basement stairs.

    c.     Other than observing that the basement stairs were old, Plaintiff did not recognize anything wrong with the stairs during the times that she had previously traversed them.

    d.     Plaintiff had heard that Mrs. Clark had previously fallen while traversing the basement stairs but did not know the circumstances of her fall. Similarly, Mr. Clark told Plaintiff that he had nearly fallen on the basement stairs a "number of times."  Plaintiff was not aware of anyone else having fallen on the basement stairs.

    e.     As Plaintiff was descending the basement stairs on the date of the incident, she was carrying a few shirts but was holding the railing; she stepped on the next to last step, felt that her foot was not supported because the step felt uneven or tilted/sloped, lost her balance, and fell forward.

    f.     Plaintiff felt that the step was uneven; her foot was fully on the step but she felt that the step was uneven on the lateral part of her foot.

    g.     As Plaintiff was descending the basement stairs on the date of the incident, she did not observe anything wrong with them.[1]

---

[1]     (*Compare* Dkt. No. 31, Attach. 5, ¶ 8 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 39, Attach. 3, ¶ 8 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact].)

4.      Defendant Thomas Clark testified at an examination before trial in this matter.  At his deposition, Defendant Thomas Clark testified as follows:

      a.      Mr. Clark never made any alterations or changes to the basement stairs in the approximately 50 years he has owned the home.

      b.      Mr. Clark almost fell on the basement stairs at some point in time after he tripped on some canned goods Mrs. Clark had left on the stairs.

      c.      Other than the time that Mr. Clark almost fell on the basement stairs and the time that Mrs. Clark fell, Mr. Clark is not aware of anyone else having fallen on the basement stairs before Plaintiff's accident.

      d.      Since the time of Plaintiff's accident, Mr. Clark has traversed the basement stairs "many times without incident" and inspected the stairs and did not see any problem with them.

      e.      Mr. Clark identified two photographs of the basement stairs and confirmed that they accurately depicted the basement stairs at the time of the accident.

5.      Photographs depicting the condition of the basement stairs were identified and confirmed as accurate in the respective depositions of the parties.

6.      Defendant Thomas Clark has owned the subject premises for more than 45 years and did not construct the basement stairs.  Mr. Clark also regularly cleaned, visually inspected, and used the basements stairs before Plaintiff's accident occurred.  During the month preceding Plaintiff's accident, Mr. Clark used and visually inspected the basement stairs on at least one occasion.[2]

---

[2]      (*Compare* Dkt. No. 31, Attach. 5, ¶ 5 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence establishing above-stated fact] *with* Dkt. No. 39, Attach. 3, ¶ 5 [Pl.'s Rule 7.1 Response, denying above-stated fact but failing to cite record evidence actually supporting denial of above-stated fact.].)  Specifically, Defendant Clark's declaration, which supports the above-stated facts, relates to the time period *before* Plaintiff's accident.  Conversely, the record evidence cited by Plaintiff in support of her contention that Defendant Clark did not inspect the stairs relates to the time period *after* Plaintiff's fall.

7.      According to Defendant Thomas Clark, there were no other accidents on the basement stairs before Plaintiff's accident other than (1) an incident when he tripped on some canned goods and almost fell, and (2) an incident when Defendant Judith Clark fell.

8.      Plaintiff had previously used the basement stairs several times before the time of her accident.

9.      Defendants' engineering expert, Thomas Fraser, PE, inspected the subject premises and concluded, to a reasonable degree of engineering certainty, that the basement stairs were in sound condition and good repair at the time of Plaintiff's accident.

**C.      The Parties' Briefing on Defendants' Motion**

**1.      Defendants' Memorandum of Law**

Generally, in their memorandum of law, Defendants assert two arguments.  (Dkt. No. 31, Attach. 4 [Defs.' Mem. of Law].)

First, Defendants argue that Defendant Thomas Clark did not (1) create the allegedly dangerous condition that caused Plaintiff's accident, (2) alter or change the basements stairs, or (3) have actual notice of any alleged dangerous condition.  (*Id.* at 11.)[3]  Specifically, Defendants argue that the basement stairs were present in the home when Defendant Thomas Clark purchased the subject premises more than 45 years ago.  (*Id.*)  In addition, Defendants argue that the stairs were in the same condition as when Mr. Clark purchased the home and that he had not received any complaints about the condition of the stairs before Plaintiff's accident.  (*Id.* at 12.)

Second, and finally, Defendants argue that Defendant Thomas Clark did not have constructive notice of a visible and apparent defect that existed for a sufficient length of time

---

[3]      Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

before Plaintiff's accident that would have allowed Mr. Clark a sufficient opportunity to discover and fix it. (*Id.*) Specifically, Defendants argue that Mr. Clark did not have constructive notice of any alleged defect for the following seven reasons: (1) only two dissimilar accidents occurred on the basement steps during the time that Mr. Clark has owned the subject premises; (2) Mr. Clark never received any complaints about the basement stairs; (3) Mr. Clark regularly used and inspected the basement stairs and did not observe, feel, or notice any hazardous or defective conditions; (4) Plaintiff had used the basement stairs several times before her accident without incident and had never complained about any hazardous or defective condition; (5) Plaintiff did not observe or notice anything wrong with the basement stairs as she was descending them before her accident; (6) the photographs of the basement stairs do not reveal a visible or apparent defect or hazardous condition; and (7) Defendants' engineering expert has opined that the basement stairs were in good condition. (*Id.* at 15-16.)

## 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiff asserts the following four arguments. (Dkt. No. 39, Attach. 6 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that there is a genuine dispute of material fact regarding whether Defendants had actual notice of the unsafe, dangerous, and defective condition of the basement stairs for the following three reasons: (1) Defendant Thomas Clark admitted that Mrs. Clark previously fell on the "next to the last step," which is the exact same step where Plaintiff's fall occurred; (2) Mr. Clark warned Plaintiff to "hold on" while using the basement stairs; and (3) Mr. Clark prohibited non-family members from using the basement stairs. (*Id.* at 13-14.)

Second, Plaintiff argues that Defendant Thomas Clark cannot rely on statements made by his wife describing how her fall occurred. (*Id.* at 15.) Specifically, Plaintiff argues that Mr.

Clark was not present during his wife's fall and his deposition testimony recounting his wife's statements regarding her fall constitutes impermissible hearsay. (*Id.*) However, Plaintiff argues that she can rely on statements made to her by Mrs. Clark indicating that Mrs. Clark's fall occurred in the same manner as Plaintiff's because it is an admission of a party opponent and therefore admissible under Fed. R. Evid. 801(d)(2)(A). (*Id.*)

Third, Plaintiff argues that the unsafe, dangerous, and defective condition of the basement stairs existed for a sufficient length of time to allow Defendants an opportunity to remedy it. (*Id.* at 16.) Specifically, Plaintiff argues that (a) Defendants owned the property for more than 45 years and made no changes to the basement stairs, (b) Mrs. Clark's fall occurred several years before Plaintiff's accident, and (c) Defendant Thomas Clark inspected the basement stairs for any hazardous, defective, or dangerous condition on a regular basis. (*Id.* at 16.)

With respect to whether a dangerous and defective condition existed, Plaintiff argues that the basement stairs lacked a handrail on the open side of the staircase, which is clearly visible from photographs. (*Id.* at 17.) Plaintiff argues that New York State courts have routinely held that a missing handrail constitutes a visible and apparent defect for purposes of constructive notice. (*Id.*) Furthermore, Plaintiff argues that her expert found the basements stairs to be dangerous and defective for the following four reasons: (1) the unsafe width of the stepping surface; (2) the right to left slope of each tread; (3) the worn and broken-off nosings of the treads; and (4) the failure to provide proper handrails. (*Id.* at 19.)

With respect to whether Defendants had knowledge of the dangerous and defective condition, Plaintiff argues that Defendant Thomas Clark has admitted that he visually inspected the basement stairs in the "days, weeks, months, and years" before her fall, including "at least"

one inspection in the month before the subject accident occurred. (*Id.* at 18.) Furthermore, Mr. Clark "used and traversed" the basement stairs "at least every other day, if not every day." (*Id.*) Mr. Clark also claims to have "observed the condition of" and "visually inspected" the basement stairs "at least weekly if not every day" for a "hazardous, defective or dangerous condition" before his trip to Minnesota. (*Id.*) Based on Mr. Clark's statements, Plaintiff argues that Mr. Clark went well beyond the reasonable duty to inspect for, and be aware of, unsafe and dangerous conditions that is required of an average property owner and that he assumed a heightened responsibility to conduct an inspection of the basement stairs on a frequent basis for such conditions. (*Id.*) Through these frequent inspections, Plaintiff argues that Mr. Clark was likely very familiar with the staircase and should have discovered its dangerous and defective condition by comparing and contrasting its characteristics with other staircases he regularly used. (*Id.* at 19-20.)

With respect to whether the defective conditions were latent, Plaintiff argues that Defendants have not argued that the conditions were latent as opposed to apparent and whether they could not have been discovered by a reasonable inspection. (*Id.* at 20-21.)

Fourth, and finally, Plaintiff argues that certain portions of Defendant Thomas Clark's declaration are inconsistent with his prior deposition testimony and, therefore, should be disregarded. (*Id.* at 21.) Specifically, Plaintiff argues that Mr. Clark states in his declaration that he regularly inspected the basement stairs, which directly contradicts his deposition testimony that he has been "up and down [the basement stairs] many, many times and without incident and think nothing about it." (*Id.* 21-22.)

### 3.       Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make the following four arguments.  (Dkt. No. 41, Attach. 1 [Defs.' Reply Mem. of Law].)

First, Defendants argue that Plaintiff has failed to create a genuine dispute of material fact regarding their alleged failure to maintain the basement stairs in a reasonably safe condition. (*Id.* at 7.)  Specifically, Defendants argue that, although Plaintiff claims that it was a violation of the building code for the staircase not to have a handrail on its open side, Plaintiff's expert has admitted that the building code does not apply to their house because the house pre-dates the building code.  (*Id.*)

In addition, Defendants argue that Plaintiff has failed to demonstrate that the lack of a handrail on the open side of the staircase was the proximate cause of the accident.  (*Id.* at 8.) Rather, Defendants argue that Plaintiff has offered only speculation that a handrail on the open side of the staircase may have helped her navigate down the stairs, instead of showing that it would have prevented the accident.  (*Id.* at 8-9.)  Defendants argue that Plaintiff's speculation is even more questionable in light of her deposition testimony that she was (a) holding the handrail on the right side of the staircase with her right hand, and (b) carrying shirts in her left hand at the time of the accident.  (*Id.* at 9.)

Second, Defendants argue that Defendant Thomas Clark's declaration does not directly contradict his prior deposition testimony because he testified that he regularly used the stairs without incident and that he looked at the stairs and did not see any problems.  (*Id.* at 10-11.) Defendants argue that this is consistent with the statements made in Mr. Clark's declaration where he explained that he visually inspected the stairs while using them.  (*Id.* at 11.)

Conversely, Defendants argue that Plaintiff's declaration contradicts her prior deposition testimony regarding how the accident occurred and states, for the first time, that the lack of a handrail on the open side of the staircase may have contributed to her accident. (*Id.*)

Third, Defendants argue that statements made by Defendant Judith Clark to Defendant Thomas Clark describing how her fall occurred do not constitute impermissible hearsay because those statements are not being offered for their truth but, instead, as proof of the lack of notice of a dangerous or hazardous condition. (*Id.*) In any event, Defendants argue, even if these statements are found to be impermissible hearsay, similar statements regarding Defendant Judith Clark's accident are also hearsay and cannot be relied on because they are the only proof offered to establish that Defendants had notice of a defective or dangerous condition. (*Id.* at 11-12 [citing *Savage v. Anderson's Frozen Custard, Inc.*, 100 A.D.3d 1563, 1564 (N.Y. App. Div. 4th Dep't 2012)].)

Similarly, Defendants argue that Plaintiff attempts to rely on hearsay statements allegedly made to her by Defendant Thomas Clark advising her to hold onto the railing because he had nearly fallen on the steps in the past. (*Id.* at 12.) Defendants argue that these statements are hearsay and, in any event, are insufficient to constitute notice because courts have held that a general awareness that a dangerous condition may be present is legally insufficient to charge a defendant with constructive notice of the specific condition that caused a plaintiff's injuries. (*Id.*) Furthermore, Defendants argue that Defendant Thomas Clark's deposition testimony that he prohibited non-family members from using the basement stairs *after* Plaintiff's accident does not establish that he had notice of a dangerous condition *before* the accident occurred. (*Id.*)

Fourth, and finally, Defendants argue that Plaintiff has failed to demonstrate that they had constructive notice of a defect in the basement stairs and/or that the challenged defects (i.e., the widths and heights of the steps) were visible and apparent. (*Id.* at 13.) Furthermore, Defendants argue that there is no requirement that they prove that the alleged defects were latent in order to dispute whether they had constructive notice. (*Id.*)

## II.     LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must

---

[4]        As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ.

P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[5] Of course, when a non-movant fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has failed to properly respond to that statement,[6]

Similarly, in this District, where a non-movant has failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have

---

[5]     *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

[6]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

"consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[7] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III. ANALYSIS

"Negligence is governed by New York state law, which requires a plaintiff to establish (1) that the defendant owed the plaintiff a cognizable duty of care; (2) that the defendant breached that duty, and (3) that the plaintiff suffered proximately caused damages." *Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014). "In a slip-and-fall case, a plaintiff must demonstrate that the defendant created the condition that caused the accident, or that the defendant had actual or constructive notice of the condition." *Feder*, 15 F. Supp. 3d at 256.

---

[7]     *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

The parties do not dispute that New York state law governs Plaintiff's substantive negligence claim. However, federal law applies to procedural aspects of the claim. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The moving party's burden of proof on a summary judgment motion is procedural, and is therefore governed by federal law. *See Hughes v. U.S.*, 12-CV-5109, 2014 WL 929837, at *4 (S.D.N.Y. Mar. 7, 2014) (applying the federal burden of proof standard on a motion for summary judgment, explaining that "[e]ven though the substantive claims are governed under New York law, the procedural issues are determined under the federal standard").

### A.      Whether Defendants Created a Dangerous Condition

After carefully considering the matter, the Court answers this question in the negative for the reasons stated below.

"To establish that a defendant created a dangerous condition or defect, a plaintiff must point to some affirmative act on the part of the defendant." *Vasquez v. U.S.*, 14-CV-1510, 2016 WL 315879, at *7 (S.D.N.Y. Jan. 15. 2016) (internal quotation marks omitted). "Although circumstantial evidence may be sufficient to defeat a motion for summary judgment if it creates an inference that Defendant created the condition through affirmative acts, [a] plaintiff cannot avoid summary judgment through mere speculation and conjecture regarding how a defendant may have created a particular hazard." *Decker*, 2017 WL 568761, at *5 (internal quotation marks omitted).

Here, there is no evidence that Defendants created the alleged defective or dangerous condition, and Plaintiff has not pointed to any circumstantial evidence that would create a reasonable inference that Defendants created the condition. Specifically, it is undisputed that the

basement stairs were present in the home when Defendants purchased it approximately 45 years

ago and Defendant Thomas Clark did not alter them in any way.  *See McHale v. Westcott*, 893 F.

Supp. 143, 148-49 (N.D.N.Y. 1995) (Pooler, J.) (finding that "plaintiffs failed to produce any

evidence tending to show that defendants created the defect" where there was "no dispute that

the stairs are about 40 years old and unmodified by either defendant"); *Deykina v. Chattin*, 12-

CV-2678, 2014 WL 4628692, at *7 (E.D.N.Y. Sept. 15, 2014) ("Here, defendant did not create

the condition, since he testified that the stairs already existed on the property when he purchased

the house in 2007 and that he did not alter them in any way.").  Because there is no evidence that

Defendants created the condition, Plaintiff must demonstrate either actual or constructive notice

to establish her claim.

**B.      Whether Defendants Had Actual Notice of a Dangerous Condition**

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated by Defendants in their memoranda of law.  (Dkt. No. 31, Attach. 4, at 15

[Defs.' Mem. of Law]; Dkt. No. 41, Attach. 1, at 11-14 [Defs.' Reply Mem. of Law].)   To those

reasons, the Court adds the following analysis.

"Actual notice requires that a defendant receive complaints or similarly be alerted to the

existence of the dangerous condition." *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10,

12 (2d Cir. 2015).  In the present case, the parties argue that certain out-of-court statements made

by Defendant Judith Clark regarding the circumstances surrounding her accident on the

basement stairs constitute impermissible hearsay and, therefore, should not be considered in

determining whether Defendants had prior notice of a dangerous condition.  As an initial matter,

Defendants cite New York state case law exclusively in support of their position that statements

made to Defendant Thomas Clark by Defendant Judith Clark should not be excluded but that statements made to Plaintiff by Defendant Judith Clark should be excluded.  (Dkt. No. 41, Attach. 1, at 11-12 [Defs.' Reply Mem. of Law].)  However, "[m]ost evidentiary rules are procedural in nature, and the Federal Rules of Evidence ordinarily govern in diversity cases." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (further noting, however, that "state evidence rules that are 'intimately bound up' with the state's substantive decision making must be given full effect by federal courts sitting in diversity") (internal quotation marks omitted).

Here, the Court will consider the statements allegedly made to Mr. Clark by Mrs. Clark regarding her accident to the extent that they prove Mr. Clark's knowledge (i.e., whether he received prior complaints of the dangerous condition) and/or notice of the alleged dangerous condition of the basement stairs.  *See Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 421 (S.D.N.Y. 2011) ("Out-of-court statements are also not considered hearsay if used to prove notice or knowledge.").  According to Mr. Clark's deposition testimony, Mr. Clark learned that Mrs. Clark fell on the basements stairs after she misjudged the steps.  (Dkt. No. 31, Attach. 1, at 69:14-15 [Clark Dep.].)[8]  Specifically, Mrs. Clark, while standing on the last step of the stairwell, believed she was already standing on the basement floor and proceeded to walk forward, which caused her to fall off the stairwell.  (*Id.* at 69:16-70:5, 83:4-6.)  Under this version of Mrs. Clark's accident, Defendants cannot be charged with knowledge and/or notice of a dangerous or defective condition in the second-to-last step because it was Mrs. Clark's

---

[8]      Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the deposition transcript.

misjudgment of the last step, and not a dangerous or defective condition of the second-to-last step, that caused her to fall.[9]  Similarly, although Mr. Clark almost fell on the stairs, this was due to Mr. Clark tripping on canned goods left on the stairs by his wife and not due to a dangerous or defective condition.  (*Id.* at 70:13-23.)

With respect to the alleged statements Mrs. Clark made to Plaintiff, the Court agrees with Plaintiff that these statements are admissible as a party-opponent admission pursuant to Fed. R. Evid. 801(d)(2)(A).  However, after carefully reviewing Plaintiff's deposition testimony regarding Mrs. Clark's statements, the Court finds that they are insufficient to create a genuine dispute of material fact regarding whether Defendants had actual notice of a dangerous or defective condition.  Specifically, Plaintiff testified that she had two separate conversations with Mrs. Clark regarding Plaintiff's accident.  (Dkt. No. 39, Attach. 1, at 32:11-16 [Pl.'s Dep.].) According to Plaintiff, the first conversation took place after she fell and walked back up the stairs where she encountered Mrs. Clark.  (*Id.* at 33:1-9.)  When Mrs. Clark asked Plaintiff what was wrong, Plaintiff told Mrs. Clark she had fallen on the stairs, to which Mrs. Clark responded "[r]emember, . . . that happened to me." (*Id.* at 33:10-13.)  When Plaintiff was asked at her deposition if Mrs. Clark provided any other information regarding her accident, Plaintiff responded that Mrs. Clark "did not get into that conversation." (*Id.* at 33:16.)

---

[9]    Plaintiff argues that Mr. Clark testified at his deposition that he recounted the details of her fall to his brother, Bruce, and told him that the circumstances of her fall were identical to Mrs. Clark's accident.  Although Mr. Clark testified that he told his brother about Plaintiff's fall, he told him that Plaintiff fell because "[s]he thought she was on the cement and was a step higher . . . and stepped off thinking she was on the cement, and then she fell." (Dkt. No. 39, Attach. 2, at 34:4-6 [Clark Dep.].)  Clearly, Mr. Clark's description does not identify a structural defect in the steps as the cause for Plaintiff's fall.

Regarding the second conversation, which took place over the telephone, Plaintiff was asked at her deposition what Mrs. Clark told Plaintiff, if anything, about "how she fell or what caused her to fall?"  (*Id.* at 32:21-22.)  Plaintiff responded as follows: "She did not. She–and, yeah, she did not, no."  (*Id*. at 32:23-24.)  Plaintiff reaffirmed at another point in her deposition that she did not know what caused Mrs. Clark to fall on the basement stairs.  Specifically, Plaintiff testified as follows:

> Q:    So, you knew Mrs. Clark had fallen, but you didn't know
>       what caused her fall, right?
>
> A:    She did say to me that the steps were very old, but she
>       didn't get into any specifics of the defects.  She just said,
>       those steps are so old.  I remember that much.
>
> Q:    Other than being old, she didn't tell you anything like any
>       defects about the steps or anything like that?
>
> A:    No.

(*Id.* at 38:5-13.)

In sum, Plaintiff's deposition testimony does not reveal anything other than the fact that Mrs. Clark had previously fallen on the basement stairs, which is undisputed.  Although Mrs. Clark allegedly stated that the steps "are so old," this is insufficient to create a genuine dispute of material fact regarding whether Defendants had notice of a dangerous or defective condition because a "general awareness that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition[.]" *Smith v. State*, 260 A.D.2d 819, 820 (N.Y. App. Div. 3d Dep't 1999).  Because Plaintiff has failed to cite any portion of her deposition testimony, or any other admissible record evidence, indicating that Mrs. Clark fell due to an uneven or sloped step (rather than simply misjudging the step), she has failed to create a genuine dispute of

material fact that Defendants had actual notice of a dangerous or defective condition on their basement stairs.

### C.     Whether Defendants Had Constructive Notice of a Dangerous Condition

After carefully considering the matter, the Court answers this question in the negative, for the reasons stated by Defendants in their memoranda of law.  (Dkt. No. 31, Attach. 4, at 12-16 [Defs.' Mem. of Law]; Dkt. No. 41, Attach. 1, at 12-14 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

"To prove liability based on constructive notice, the danger must have been visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it." *Nussbaum*, 603 F. App'x at 12 (internal quotation marks omitted).  "[C]onstructive notice will not be imputed where a defect is latent and would not be discoverable upon reasonable inspection."  *Curiale v. Sharrotts Woods, Inc.*, 9 A.D.3d 473, 475 (N.Y. App. Div. 2d Dep't 2004).  "To show constructive notice, the claimant must do more than show that the defendant was generally aware of the type of condition alleged to have caused plaintiff's injury; he must show that the defendant was aware of the particular condition at issue." *Borts v. U.S.*, 14-CV-0089, 2016 WL 2622292, at *2 (E.D.N.Y. Mar. 15, 2016) (internal quotation marks and alterations omitted).  "Whether a plaintiff has established a defendant's awareness of a dangerous condition at a level of specificity sufficient to establish constructive notice turns on the facts of each case, but the inquiry is guided by the principle that '[c]onstructive notice of a particular condition is inextricably intertwined with the concept of foreseeability.'" *Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 194 (S.D.N.Y. 2004) (quoting *Taylor v. U.S.*, 121 F.3d 86, 90 [2d Cir. 1997]).

### 1. Whether Any Defect was Visible and Apparent

#### a. Missing Handrail on Open Side of the Basement Stairwell

The Court finds that, generally, a missing handrail is both visible and apparent. *Deykina v. Chattin*, 12-CV-2678, 2014 WL 4628692, at *8 (E.D.N.Y. Sept. 15, 2014) ("The lack of any guardrail altogether is clearly visible and apparent to any observer and does not require any type of structural analysis to discover."). However, the Court agrees with Defendants that they were not required to have a handrail on the open side of their basement stairwell because their home pre-dates the first statewide building code that required handrails on open sides.[10] *See Hotaling v. City of New York*, 55 A.D.3d 396, 397 (N.Y. App. Div. 1st Dep't 2008) ("If a building was constructed in compliance with code specifications and industry standards applicable at the time, the owner is under no legal duty to modify the building thereafter in the wake of changed standards."); *Ndiaye v. NEP W. 119th St. L.P.*, 145 A.D.3d 564, 565 (N.Y. App. Div. 1st Dep't 2016) ("Defendants established their entitlement to judgment as a matter of law by submitting evidence that there was no defective condition on the stairs . . . and that the building was constructed before 1916 and complied with the requirements of the applicable Tenement House Law, which only required one handrail on staircases like the one at issue.") (internal citation omitted). Indeed, Plaintiff's expert acknowledged as much in a supplement to his expert report. (Dkt. No. 39, Attach. 5, at 12 [Ex. "B" to Peden Decl.].)

In any event, the Court agrees with Defendants that Plaintiff has failed to create a genuine dispute of material fact regarding whether the missing handrail either caused her fall or

---

[10]    According to Plaintiff's expert, "[t]he first statewide application of a building code in New York State was 1951" and, according to Broome County tax records, Defendants' home was constructed in 1940.  (Dkt. No. 39, Attach. 5, at 12 [Ex. "B" to Peden Decl.].)

would have prevented her injuries. (Dkt. No. 41, Attach. 1, at 8-10 [Defs.' Reply Mem. of Law].) This is because Plaintiff testified at her deposition that, at the time of the accident, she was holding onto the handrail on the right side of the stairwell with her right hand while carrying shirts in her left hand. (Dkt. No. 31, Attach. 1, at 39:5-6, 40:21-23, 41:8-11, 42:5-7 [Pl.'s Dep.].) Although Plaintiff submitted a declaration accompanying her opposition memorandum of law stating that she would have used a handrail on the open side of the staircase had one been present and/or that it would have prevented her fall (Dkt. No. 39, Attach. 4 [Pl.'s Decl.]), the Court finds this to be wholly speculative because her deposition testimony establishes that both of her hands were preoccupied. *See Igbodudu-Edwards v. Bd. of Managers of the Parkchester N. Condo., Inc.*, 105 A.D.3d 448, 449 (N.Y. App. Div. 1st Dept' 2013) ("[G]iven that plaintiff was holding the right-side handrail at the time she fell, it would require pure speculation to assume that had there been an intermediate handrail, she would have been able to grasp it as she fell, avoiding her injury."); *Bardales v. VAM Realty Corp.*, 124 A.D.3d 707, 707 (N.Y. App. Div. 2d Dep't 2015) ("Moreover, since the plaintiff was carrying a pot weighing at least 35 to 40 pounds with both hands as he descended the staircase, any alleged defect in the handrail was not a proximate cause of the fall"); *Daria v. Beacon Capital Co.*, 299 A.D.2d 312, 312 (N.Y. App. Div. 2d Dep't 2002) ("[T]o the extent the plaintiffs claim that the stairway was defective because it lacked a second handrail, we note that at the time of the accident, the injured plaintiff was carrying a mirror with both of his hands. Thus, the alleged lack of a second handrail was not the proximate cause of his fall."); *Jenkins v. N.Y.C. Housing Auth.*, 11 A.D.3d 358, 359 (N.Y. App. Div. 2004) ("[P]laintiff cannot prevail on her claim that the staircase, which had a handrail on the right side only, should have had handrails on both sides, since she failed to offer any evidence indicating that the omission of a left-side handrail (alongside the wall) was a proximate cause of her fall.").

### b.     The Step's Uneven Surface / Slope and Worn and Broken-Off Nosings of the Treads

The Court finds that Plaintiff has failed to create a genuine dispute of material fact

regarding whether the structural defects identified by her expert were visible and apparent.

Specifically, Plaintiff's expert made the following measurements regarding the subject staircase:

> The stair is approximately 2'-10" wide. The treads are about 2'-8
> ½" in length and have a tread width that varies from 8 ¼" to 8 ½"
> as measured from the edge of the nosing to the edge of the nosing.
> The actual width of the stepping surface of the 2 x 8 tread is 7 ½".
> The riser heights vary from 7 ¼" to 8 ¼". . . . At the bottom 2
> steps, the edge of the wood is worn leaving an irregular radius
> along the nosing. The treads are sloped from right to left facing
> down the stair. The slope varies up to ½" per 1'-0" on the lowest
> treads.

(Dkt. No. 39, Attach. 5, at 5 [Peden Exp. Report].)

Although Plaintiff's expert concedes that the "first statewide application of a building

code in New York" does not apply to the subject premises, he cites three different publications in

support of his conclusion that "[g]uidelines for stair construction were well established before

1940." (Dkt. No. 39, Attach. 5, at 1 [Peden Exp. Report].) More specifically, Plaintiff's expert

cites a publication from 1903 that states that "[t]he height of the riser and width of step are

governed by the space allowed for the stairs, but as a general rule the step should not be less than

9 inches wide and the riser should not exceed 8 inches in height." (Dkt. No. 39, Attach. 5, at 1

[Peden Supplemental Exp. Report].) Next, Plaintiff's expert cites a publication from 1920 that

states that "the best practice is to make risers in ordinary stairs from 7 to 7 ½ inches in [height].

Treads 10 inches wide are most commonly required with 7 to 7 ½ inches in height of riser." (*Id.*

at 2.) Finally, Plaintiff's expert cites a publication from 1932 that includes a dimensional chart

showing a "maximum riser height of 8 inches correlating to a tread width of 9 ⅜ inches." (*Id.*)

Based upon these publications and his analysis of the basement staircase, Plaintiff's expert made the following three general conclusions: (1) the variability in the riser and tread dimensions that existed in the subject stair made it unsafe, (2) the tread dimensions of the stair were less than 9 inches and therefore were too small for safe descent, and (3) the variation in riser height, the sloping condition of the treads and the worn and broken tread covering indicate that the stair has not been maintained in good condition. (*Id.*) Plaintiff's expert further opined that "[t]he stair treads are excessively worn have damaged nosings, are uneven and unlevel and violate applicable codes and the standard of care for safe property maintenance. . . . The failure of the home owner to replace the existing dangerous treads created the dangerous conditions that caused [Plaintiff's] fall." (Dkt. No. 39, Attach. 5, at 7 [Peden Exp. Report].)

For the sake of brevity, the Court will not linger on the fact that Defendant Thomas Clark inspected the steps regularly and did not find any visible or apparent defective conditions. *See Rapino v. City of New York*, 299 A.D.2d 470, 471 (N.Y. App. Div. 2d Dep't 2002) ("If a defect could not have been discovered by a layman, even by inspection, it is considered a latent defect."); *Nicoletti v. Iracane*, 38 Misc.3d 1220(A) (N.Y. Sup. Ct. Kings Cty. 2013) ("Reasonable inspection, not inspection for latent defects, is required to establish constructive notice."). Nor will the Court linger on the fact that Plaintiff testified at her deposition that she looked at the steps before walking on them and did not observe anything wrong with them. (Dkt. No. 31, Attach. 1, at 44:13-23 [Pl.'s Dep.].) More important is the fact that "[c]ourts have declined to impute constructive notice to defendants where the allegedly defective conditions deviate from accepted practices by relatively small dimensions that could only be detected through structural analysis." *Deykina*, 2014 WL 4628692, at *8; *see also McHale*, 893 F. Supp.

at 149 (finding defendant had no constructive notice of variance in riser heights and improper height of hand railing because "the only way defendants could have discovered the defect was by undertaking a structural analysis similar to the one [plaintiff's expert] performed," and "plaintiffs did not allege any fact or occurrence that would have alerted defendants to the need for such analysis"); *Ferington v. Dudkowski*, 49 A.D.3d 1267, 1268 (N.Y. App. Div. 4th Dep't 2008) (finding that a step that was "one third of an inch out of level" was "a minor defect" and "would not be 'visible and apparent' upon a reasonable inspection").

Defendants rely on *McHale* for the proposition that any small differences in the height and length of their basement steps were not visible and apparent. In *McHale*, then-District Judge Pooler found that defendants, who conducted annual inspections of the stairs at issue and never received any complaints about the stairs, had no way of knowing "that the stairs' riser heights varied by more than one-eighth of an inch and that this variance constituted a structural defect." *McHale*, 893 F. Supp. at 149.

Conversely, in *Diaz v. Calabrese*, 13-CV-1531, 2014 WL 6883517 (E.D.N.Y. Dec. 4, 2014), the United States District Court for the Eastern District of New York found that a jury could conclude that a two-inch difference in the height of planks in a deck would have been visible and apparent to defendants. *Diaz*, 2014 WL 6883517, at *10. The district court further noted that "a jury could reasonably find that the photographs [of the deck] show clearly that nearby defects in the decking were visible and apparent, and that defendants should therefore have been on notice of the specific defect in question located only a foot or two away." *Id.*

Here, the Court agrees with Defendants that the structural defects identified by Plaintiff's expert are latent rather than visible and apparent, and that Defendants would not have known

about these defects without a structural analysis.  Specifically, Plaintiff's expert opined that the

tread dimensions of the steps in the basement staircase were too small for safe descent because

they were less than 9 inches.  However, the measurements made by Plaintiff's expert show that

the tread width of the steps vary from 8 ¼" to 8 ½" and are approximately 2'-8 ½" in length.

This is less than a one inch difference from the 9 inch guideline.  Granted, Plaintiff's expert also

found that the actual width of the stepping surface of the 2 x 8 tread is 7 ½", which is a 1 ½"

difference.  Nevertheless, the Court finds that a reasonable jury could not conclude that laymen

such as Defendants would find these differences in the dimensions to be visible and apparent.

Similarly, Plaintiff's expert found that the riser heights in the basement staircase varied

from 7 ¼" to 8 ¼" and opined that this variation contributed to Plaintiff's fall.  Once again, the

Court finds that a one inch difference in variation would not be visible and apparent to laymen

such as Defendants.[11]  Likewise, although Plaintiff's expert found that the nosing edge of each

tread was worn and chipped, which may have been visible and apparent, the Court nonetheless

finds that this defect, in and of itself, would not have drawn Defendants' attention to the irregular

height and length of their steps.  Perhaps most importantly, the Court has reviewed the various

photographs of the basement staircase that were submitted by the parties (Dkt. No. 31, Attach. 3,

at 6-9) and finds that a reasonable jury could not conclude that there is a discernable difference

---

[11]     The Court reaches this conclusion even if it were to utilize the guidelines from the
1920 publication cited by Plaintiff's expert.  Specifically, that publication states that "[t]reads 10
inches wide are most commonly required with 7 to 7 ½ inches in height of riser." (Dkt. No. 39,
Attach. 5, at 2 [Peden Supplement Exp. Report].)  Therefore, assuming the average height of the
risers in the basement staircase is 7 ½", the treads would need to be 10 inches wide.  Because
Plaintiff's expert found the tread width to vary from 8 ¼" to 8 ½", the tread width would need to
be approximately 1 ½" wider to meet this guideline.  However, as discussed above, the Court
finds that a reasonable jury could not find that a 1 ½" difference in dimension would be visible
and apparent to laymen such as Defendants.

in the dimensions of each step that would make any alleged structural defect visible and apparent.

Finally, because the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding whether the alleged structural defects were visible and apparent, the Court need not decide whether these alleged defects existed for a sufficient length of time before Plaintiff's accident to permit Defendants an opportunity to discover and remedy them. However, because Defendants purchased the subject premises approximately 45 years ago and made no changes to the staircase before Plaintiff's fall, there can be no question that any alleged structural defect in the stairs existed for a sufficient length of time before the accident.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 31) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>** in its entirety.

The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

Dated: September 27, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge